United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GIDEON DAMARYAM,<br>Plaintiff,<br>v.<br>ZACKERY P. MORAZZINI, et al.,<br>Defendants. | Case No. 5:26-cv-01672-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; TERMINATING ALL REMAINING MOTIONS** |

Pro se Plaintiff Gideon Damaryam ("Plaintiff") asserts claims under the Individuals with Disabilities Education Act ("IDEA"), the Supremacy Clause, 42 U.S.C. § 1983, and "the First and Fourteenth Amendments" against Defendants Zackery P. Morazzini, the Director of the California Office of Administrative Hearings ("OAH"), and Aaron Lott, the Director of Special Education at East Side Union High School District ("the District") (collectively, "Defendants"). First Am. Compl. ("FAC"), ECF No. 39, at 7–36.[1] Before the Court is the District's motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Mot., ECF No. 49. This motion is fully briefed. Opp'n, ECF No. 51; Reply, ECF No. 53.

[1] The Court grants Plaintiff's motion for leave to file the amended complaint attached to ECF No. 39. The Court will nevertheless examine the jurisdictional arguments in the motion to dismiss still applicable to the operative complaint. Pursuant to Federal Rule of Civil Procedure 12, the Court has a continuing "obligation to consider jurisdictional issues at any stage of the proceedings, even sua sponte if it appears subject matter jurisdiction may be lacking." *Mohamed v. Nielsen*, No. 18-CV-00467-SK, 2018 WL 4361183, at *1 (N.D. Cal. Sept. 11, 2018) (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)); *see also Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999) (holding that the court has an independent obligation to determine sua sponte whether a case is moot). If a court determines that it lacks subject matter jurisdiction over an action, it must dismiss the case. *Augustine*, 704 F.2d at 1077; Fed. R. Civ. P. 12(h)(3).

After carefully reviewing the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Local Rule 7-1(b). For the reasons explained below, the Court **GRANTS** the District's motion to dismiss and **TERMINATES** as moot all outstanding motions.

## I. BACKGROUND

### A. Factual History

Plaintiff is the biological father of a minor child with special needs, D.D. FAC ¶ 1. Plaintiff alleges that he began the process of requesting an Individualized Education Program ("IEP") evaluation for D.D. with the East Side Union High School District in August 2025. *Id.* ¶ 25. The District ultimately provided D.D. with an IEP, but Plaintiff alleges that it excluded him from the planning of the assessment, failed to provide sufficient written notice, and predetermined an in-person placement and at-home assessments. *Id.* ¶¶ 32–40. Plaintiff believes D.D. would benefit more from a remote-learning environment. *See id.*

Plaintiff filed a petition for a special education due process hearing with the OAH pursuant to the IDEA on October 28, 2025, challenging D.D.'s IEP placement and the District's failure to provide written notice. *Id.* ¶ 41. The Administrative Law Judge ("ALJ") held a hearing and thereafter denied Plaintiff's challenge on February 4, 2026, finding that Plaintiff lacked standing. Mot. for TRO, Ex. 6, OAH Order of Dismissal, ECF No. 3, at 48. Although the IDEA provides parents the right to due process hearings before the OAH, the ALJ found Plaintiff was not a "parent" for purposes of the IDEA. *Id.* After he filed his petition, but before the ALJ's decision, the Santa Clara Superior Court awarded D.D.'s mother sole legal custody on January 27, 2026, making her the only parent who could make educational decisions for D.D. *Id.*, Ex. 5, First Superior Court Order, ECF No. 3, at 45. The ALJ noted that when a judicial decree or order identifies a specific person as having the sole authority to make educational decisions on behalf of a student, that person is the only "parent" who has standing to prosecute IDEA claims. OAH Order of Dismissal 2–3 (citing 34 C.F.R. § 300.30(b)(2); Cal. Educ. Code § 56028(b)(2)). For this

United States District Court
Northern District of California

reason, the ALJ dismissed Plaintiff's OAH proceeding without prejudice and informed Plaintiff that he may re-file his claim if and when he regains legal custody. *Id.* at 5.

### B. Procedural History

Plaintiff initiated this action approximately three weeks later on February 25, 2026, filing alongside his complaint an application to proceed *in forma* pauperis ("IFP") and an *ex parte* motion for a temporary restraining order ("TRO"). ECF Nos. 1, 3, 4. This matter was assigned to the Undersigned the following day. ECF No. 9. On February 27, the Court granted Plaintiff's motion to proceed IFP and ordered Defendants to respond to the TRO motion by March 4. ECF Nos. 10, 22. However, the U.S. Marshall's Office was unable to serve Defendants prior to their March 4 filing deadline, so the Court shortly thereafter denied the TRO motion, converted the motion to a request for a preliminary injunction ("PI"), and set a new briefing schedule and PI hearing for April 29. ECF No. 14.

Then, between March 5 and March 26, Plaintiff filed four additional emergency *ex parte* motions. Plaintiff's first motion, filed on March 5, sought to prevent the District from holding a meeting with D.D. scheduled for 12:00 p.m. that same day, as well as an assessment schedule for March 6. ECF No. 15. Plaintiff argued these meetings violated the IDEA automatic "stay-put" provision. *Id.* This provision requires that, pending resolution of IDEA claims, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." 20 U.S.C. § 1415(j). The Court denied Plaintiff's motion that same day, finding no evidence that these circumstances violated 20 U.S.C. § 1415(j). ECF No. 16. The Court was thereafter informed that the March 5 meeting did not occur, in any event.

Plaintiff filed his second motion on March 9, which was docketed on March 11. ECF No. 18. There was a Superior Court family law case scheduled for March 12, and Plaintiff sought to prevent the Superior Court from entering an order requested by D.D.'s appointed counsel that

would re-schedule the meeting with the District and order that D.D. attend. *Id.* Plaintiff again argued this meeting would violate the IDEA's automatic stay-put provision. *Id.* The Court denied Plaintiff's second motion on March 12, finding no § 1415 violation and declining to interfere in the Superior Court's handling of the family law matter before it. ECF No. 20.

Plaintiff filed his third motion on March 12, which was docketed on March 13. ECF No. 21. Plaintiff stated that the Superior Court did in fact order the assessment to take place directly following the March 12 hearing, and Plaintiff renewed his request to enjoin it from occurring. *Id.* The Court denied the motion on March 13, finding no violation and no jurisdiction to overturn a Superior Court-ordered assessment. *Id.*

After Plaintiff filed his fourth motion on March 20 similarly seeking to enjoin another planned assessment, ECF No. 24, followed by an "amended" motion filed on March 23, ECF No. 25, the Court advanced the preliminary injunction hearing to April 13 and indicated it would hear arguments regarding the preliminary injunction and the most recent *ex parte* motions at the same time.[2] ECF Nos. 26, 30.

On April 13, all parties appeared before the Court, and the Court heard oral arguments on all pending motions.[3] ECF No. 34. The parties engaged in an extensive discussion with the Court in which the focus, rightfully, was on the best interest of the child. *Id.* The parties ultimately accepted the Court's invitation to attempt further mediation in the spirit of ensuring the child receives the educational resources she needs to thrive, first and foremost. *Id.* The Court stayed all deadlines in this matter pending further mediation. ECF No. 35.

The parties subsequently met before Magistrate Judge Cousins on April 30, and again on May 7, to discuss this sensitive matter further. ECF Nos. 44, 47. However, the minute entries

---

[2] Between then and the hearing, Plaintiff filed an additional motion for leave to file an amended and "supplemental" complaint and a supplemental brief in support of his motion for a preliminary injunction and stay-put order. ECF Nos. 39, 40. However, these filings were not docketed until after the April 13 hearing.

[3] Plaintiff had also filed a motion for leave to amend his complaint prior to the hearing on April 10, but this filing did not appear on the docket until April 14. ECF No. 39.



United States District Court
Northern District of California

from these meetings indicate that the parties were unable to reach resolution on the best path forward for D.D. *Id.* The Court then issued an order on May 13, stating that it would not be able to reach a resolution in this case until it receives further information on the status of custody proceedings in the Superior Court, following the recent mediation between Plaintiff and D.D.'s mother. ECF No. 48. The Court ordered the parties return to the Superior Court and promptly update the Court of any changes in custody. *Id.*

The following day, the District filed the present motion to dismiss for lack of jurisdiction. *See* Mot. The Court took this motion under submission on July 6. ECF No. 64. In the interim, Plaintiff filed a "renewed motion to enforce the idea of stay-put," ECF No. 56, and a motion for leave to file a supplemental declaration in support of the preliminary injunction, ECF No. 57.

## II. LEGAL STANDARD

A district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. Fed. R. Civ. Pro. 12(b)(1). Once a defendant moves to dismiss for lack of subject matter jurisdiction, the plaintiff has the burden of establishing the court's jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, unless the defendant brings a factual attack, courts accept the facts alleged in the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## III. DISCUSSION

Unfortunately, following extensive motions practice, multiple hearings, and multiple settlement conferences taking place over the last five months, the parties have still not reached resolution on which path forward is in D.D.'s best interest. Now before the Court is the District's motion to dismiss.

The Court finds Plaintiff has failed to establish Article III standing to pursue his claims in this case.[4] "Federal courts are courts of limited jurisdiction; they are authorized only to exercise

---

[4] Plaintiff is correct that standing "is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*,

jurisdiction pursuant to Article III of the U.S. Constitution and federal laws enacted thereunder." *Am. Fed'n of Teachers v. DeVos*, 484 F. Supp. 3d 731, 741 (N.D. Cal. 2020); *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction"). To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). At the pleading stage, the plaintiff has the burden to establish standing by "clearly . . . allege facts demonstrating each element." *Spokeo Inc. v. Robins*, 578 U.S. at 338 (2016), *as revised* (May 24, 2016).

Here, Plaintiff failed to plead facts demonstrating at least two elements: (1) injury and (2) redressability. The Court will discuss each in turn.

**A. Injury**

First, Plaintiff has not identified a cognizable injury. Plaintiff's claims are all premised on the assertion that he possesses a fundamental right to participate in educational decision-making for D.D. *See, e.g.,* FAC ¶¶ 62–64, 82, 91, 107, 120. But Plaintiff has no right to make educational decisions for D.D. currently, or at the time the OAH denied his claim. As discussed above, the Superior Court awarded D.D.'s mother sole legal custody on January 27, 2026, and under California law, "sole legal custody" means that only one parent has the right and responsibility to make decisions relating to the health, education, and welfare of a child. Cal. Fam. Code § 3006. The Court has also learned through the present motion that the Superior Court re-affirmed its

---

547 U.S. 332, 353 (2006). But the cases Plaintiff cites do not support his position that the District must separately address standing for each claim. *See id.* ("Plaintiffs failed to establish Article III injury with respect to their *state* taxes, and even if they did do so with respect to their *municipal* taxes, that injury does not entitle them to seek a remedy as to the state taxes."); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."). Article III standing is required for all plaintiffs bringing all claims. The Court's standing finding accordingly applies equally to every claim, including his claim against OAH alleging procedural failures.

decision two more times since then on March 12, 2026 and May 21, 2026. Reply, Exs. F & G, ECF Nos. 53-1, 53-2.

Plaintiff argues that he still has the right to make educational decisions on behalf of D.D. because the Superior Court's custody order contains procedural errors, and the OAH relied on that invalid order in error. *See* Opp'n 4–6. However, for the reasons explained in the section below, the Court has no jurisdiction to resolve these issues.

Plaintiff also alleges that he has "independent Wilkelman parental rights surviving custody charges," citing to *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 520 (2007). But Plaintiff's citation to *Wilkelman* is misplaced. The Supreme Court there examined the broader question of "whether parents, either on their own behalf or as representatives of the child, may proceed in court unrepresented by counsel though they are not trained or licensed as attorneys." *Id.* There were no issues presented in that case regarding the impact of a state custody order on the definition of a "parent" under the U.S. Constitution or other federal law. *Id.* To Plaintiff's point, though, the Court notes it is generally true that state-awarded custody and parental rights under the U.S. Constitution are not necessarily the same. "It is long-settled that custodial parents have a liberty interest in the 'companionship, care, custody, and management' of their children." *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). As for parents who "lack legal custody," they still generally retain this liberty interest, but with limitations imposed by those state court custody orders. *Id.* For example, the Ninth Circuit has held "that non-custodial parents with court-ordered visitation rights have a liberty interest in the companionship, care, custody, and management of their children," but it also recognized that this "interest is unambiguously lesser in magnitude than that of a parent with full legal custody." *Id.* Here, Plaintiff still has a fundamental right under the U.S. Constitution to maintain a relationship with D.D. and retains physical custody. He does not currently, however, have the specific right to make educational decisions on behalf of D.D. pursuant to the Superior Court custody order.

United States District Court
Northern District of California

### B. Redressability

Second, and relatedly, the Court has no jurisdiction over Plaintiff's claims because it cannot provide the relief Plaintiff seeks. Plaintiff makes the following substantive requests for relief:

> 1. Declare that the January 27, 2026 family-court order may not be given operative effect by Defendants to limit or extinguish Plaintiffs IDEA-governed rights or access to federal administrative remedies.
>
> 2. Declare that the summary dismissal of Plaintiffs IDEA due-process complaint, insofar as it was based on the January 2026 family-court order, violates the Fourteenth Amendment, constitutes retaliation, and violates IDEA procedural safeguards under 20 U.S.C. §§ 1415(b)(l) and 1415(f)(l)(A) and 34 C.F.R. §§ 300.503 and 300.507.
>
> 3. Declare that state agencies and officials may not rely on procedurally defective family court orders to extinguish independent federal parental rights recognized in Winkelman v. Parma City Sch. Dist., 550 U.S. 516 (2007).
>
> 4. Issue a mandatory injunction requiring Defendants, in their official capacities, to immediately reinstate Plaintiffs due-process complaint (OAH Case No. 2025101092) before the California OAH for resolution on the merits.
>
> 5. Enjoin Defendants from enforcing, relying upon, or giving legal effect to the OAH dismissal of Plaintiffs IDEA due-process complaint.
>
> 6. Enjoin Defendants from excluding Plaintiff from full participation in all IDEA-governed IEP meetings, evaluations, placement decisions, and procedural safeguards.
>
> 7. Require Defendants to ensure notice, participation, and individualized assessment including strict adherence to Prior Written Notice (PWN) requirements-consistent with IDEA's procedural safeguards during all future proceedings.
>
> 8. Declare that D.D.'s stay-put placement under 20 U.S.C. § 14150) is the last-agreed educational program and enjoin Defendants from unilaterally altering D.D.'s educational placement pending resolution of the reinstated due-process proceeding.
>
> 9. Declare that a subsequent state family-court order cannot retroactively extinguish vested IDEA procedural rights or bar federal due-process proceedings based on past violations, particularly where the statute of limitations could expire before refiling . . . .

FAC, at 28.

Plaintiff's claims lack redressability for two primary reasons.

First, as discussed above, Plaintiff still does not have legal custody over D.D. Thus, even if the Court were to order OAH re-initiate proceedings, the same result would inevitably occur—under California law, OAH could not afford Plaintiff the relief he seeks unless and until he regains legal custody. *See* 34 C.F.R. § 300.30(b)(2); Cal. Educ. Code § 56028(b)(2) (providing that when a judicial decree or order identifies a specific person as having the sole authority to make educational decisions on behalf of a student, that person is the only "parent" who has standing to prosecute IDEA claims).

Second, the Court has no jurisdiction to overturn or otherwise alter the legal effect of the Superior Court's custody orders. As the Court briefly noted in a prior order, federal district courts do not have jurisdiction to hear cases that are, in effect, appeals from state court judgments under what is known as the *Rooker-Feldman* doctrine. *See, e.g., Carmona v. Carmona*, 603 F.3d 1041, 1050 (9th Cir. 2010). Courts in the Ninth Circuit apply this doctrine by considering whether the plaintiff: (1) "asserts as a legal wrong an allegedly erroneous decision by a state court," and (2) "seeks relief from a state court judgment based on that decision." *Id.* at 1050 (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). The Court finds both factors present here. Plaintiff plainly asserts that the January 27 Superior Court custody order was "procedurally flawed," and his complaint specifically seeks in part a declaration that the custody order "not be given operative effect" by the OAH. FAC, at 28. The other relief sought would similarly require this Court to disregard the Superior Court's custody orders. *See id.*

Plaintiff contends that the Court does in fact have the jurisdiction to review the Superior Court custody order and determine what legal effect it has, if any, under *Ex parte Young*, 209 U.S. 123 (1908). But the Court finds Plaintiff's reliance on this doctrine misplaced. *Ex parte Young* provides a well-recognized exception to Eleventh Amendment immunity baring money damages and other retrospective relief against a state. *Id.* at 149–56. The *Ex parte Young* doctrine permits certain claims to proceed against state officials in their official capacity, specifically "claims

United States District Court
Northern District of California

seeking prospective injunctive relief . . . to remedy a state's ongoing violation of federal law." *Arizona Students' Ass'n ("ASA") v. Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Ex parte Young*, 209 U.S. at 149–56). To pursue claims under *Ex parte Young* against a state official for prospective injunctive relief, plaintiffs "must identify a practice, policy, or procedure that animates the constitutional violation at issue." *Id.* (finding the plaintiff's identification of the Arizona Board of Regents' "changes to its fee-collection policies" was a sufficient source of ongoing violation of federal law); *see also Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 724 (9th Cir. 2022) (finding genuine issue of material fact existed as to whether school district's "ongoing policy prohibiting future [field] trips" was sufficient ongoing violation of federal law); *see also Los Molinos Mut. Water Co. v. Ekdahl*, No. 21-CV-01961-DADD, 2023 WL 6386898, at *18 (E.D. Cal. Sept. 29, 2023) (finding allegation of California Department of Fish and Wildlife's "ongoing failure to maintain fish ladders" sufficient to state an ongoing violation of federal law). The facts alleged here do not invoke the *Ex parte Young* doctrine. Eleventh Amendment immunity has not been raised as an issue in this case, and Plaintiff is not challenging "a practice, policy, or procedure that animates the constitutional violation at issue." *ASA*, 824 F.3d at 865.

Plaintiff also argues that his claims do not in fact require the Court to review Superior Court orders; they require only review of the District and OAH's compliance with federal law. But this argument is contracted by Plaintiff's own pleadings. Plaintiff's opposition specifically takes issue with the assumption that the Superior Court order is a *valid* "judicial decree or order" capable of displacing the federal IDEA biological parent presumption and argues the custody order is *invalid* because it was entered without due process. Opp'n 4–6. Plaintiff also explicitly seeks relief, as discussed above, in the form of the custody orders "not be[ing] given operative effect" by the OAH. FAC, at 28. For the Court to find the order invalid or without legal effect for for purposes of the IDEA, it would necessarily have to review the Superior Court custody ordera for procedural flaws. Such a review is precluded under the *Rooker-Feldman* doctrine. *See Cooper*

United States District Court
Northern District of California

*v. Ramos*, 704 F.3d 772, 781 (9th Cir. 2012) ("Because Cooper in fact challenges the particular outcome in his state case, it is immaterial that Cooper frames his federal complaint as a constitutional challenge to the state court's decision, rather than as a direct appeal of that decision. Cooper both asserts as his injury legal error or errors by the state court and seeks as his remedy relief from the state court judgment. The *Rooker-Feldman* doctrine therefore bars the claim.") (cleaned up) (internal quotation marks and citations omitted) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 905 n.4 (9th Cir. 2003); *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004)); *see contra Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (finding *Rooker-Feldman* did not bar claims challenging city ordinances against camping and sleeping in public, even where the plaintiff sought relief designed to remedy injuries suffered from a state-court judgment enforcing the ordinances, because the plaintiff did not allege that the state court itself committed legal error or seek relief from the state court judgment itself).[5]

Finally, Plaintiff contends that he has no other avenue to seek relief from the Superior Court custody orders because custody proceedings are ongoing and there is no "final" order. The Court finds this both inaccurate and irrelevant. While it is true that only "final" orders are appealable to the California Courts of Appeal, there are avenues by which Plaintiff can seek modification of the court's custody orders now. Opp'n 4–5. The Court takes judicial notice pursuant to Federal Rule of Evidence 201 of the California Courts self-help page, which instructs parties seeking to modify custody orders to file a Request for Order (form FL-300). California Courts, Self-Help Guide, *What you can file to ask for a child custody and visitation order* (last accessed August 6, 2026), available at https://selfhelp.courts.ca.gov/child-custody/filing-options. The Court also takes notice that the Santa Clara Superior Court offers mediation services, which are ordered by the Superior Court following the filing of a form FL-300. Superior Court of California, County of Santa Clara, Family Division, *Choices for Solving Legal Problems without a Court Heating* (last accessed August 6, 2026), available at https://santaclara.courts.ca.gov/system/

[5] Plaintiff's citation to these cases as supporting his position is misplaced.

files/forms/fm-1021.pdf. The Court is informed that Plaintiff has already been availing himself of these avenues for relief. Reply 6. But regardless, Plaintiff has not provided any authority to suggest that federal district court jurisdiction arises when plaintiffs have no other avenue of relief in the state court system.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** the District's motion to dismiss. Given the inescapable standing deficiencies at this time, the Court finds amendment futile and dismisses all claims without leave to amend.[6] *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). The Court encourages all interested parties to continue their conversations and work toward the mutual and central goal of creating an educational environment that best serves D.D.'s needs.

The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

Dated: August 7, 2026

EDWARD J. DAVILA
United States District Judge

---

[6] Though the OAH did not file a separate motion to dismiss, the Court dismisses claims against it nonetheless pursuant to its obligation to dismiss a case if it determines that it lacks subject matter jurisdiction over the action. Fed. R. Civ. P. 12(h)(3).